Ronald Carrol DRAPER,
Appellant/Cross–
Respondent,

v.

.Harriett Ann DRAPER,
Respondent/Cross–
Appellant.

No. WD 54930.

Missouri Court of Appeals,
Western District.

Dec. 22, 1998.

Kenneth C. Hensley, Hensley & Hensley, Raymore, for appellant.

William E. Shull, Liberty, for respondent.

Before Presiding Judge ALBERT A. RIEDERER, Judge HAROLD L. LOWENSTEIN and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Appellant/Cross–Respondent, Ronald Draper, appeals the trial court's judgment denying his motion to modify spousal maintenance payments, and argues that the trial court's order denying his motion to modify spousal maintenance was against the weight of the evidence. Respondent/Cross–Appellant, Harriett Draper, cross-appeals the trial court's order terminating child support payments for her then 19–year old daughter. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The Drapers' marriage was dissolved on February 10, 1992. Pursuant to the decree, Ms. Draper was awarded custody of their minor child, Jennifer, then 14 years old. In conjunction with the agreement, Mr. Draper

was ordered to pay the sum of $516.00 per month in child support for Jennifer and $400.00 per month in spousal maintenance. The court determined that the couple's older child, Patrick, was emancipated.

Some four years later, on August 12, 1996, Mr. Draper filed a motion to modify child support and spousal maintenance. In support of his motion, Mr. Draper argued that his financial circumstances had changed significantly since the dissolution decree was entered in 1992. Specifically, Mr. Draper asserted that he was forced to leave work in December 1995 due to health problems, and that this decreased his monthly income. Mr. Draper further asserted that his child support obligation should be terminated because Jennifer was 18, and had graduated from high school in the Spring of 1996. While she had enrolled in and attended college in the Fall of 1996, she dropped out of school in the middle of the Spring 1997 semester, without a good medical or other reason. Therefore, he argued that, under Section 452.340,[1] Jennifer should be declared emancipated and his obligation to pay child support for her should terminate.

The court heard evidence on July 10, 1997, and again on July 14, 1997. At the conclusion of the hearing, on the later date, the court denied Mr. Draper's request for a reduction in spousal maintenance. Although there was evidence that Jennifer enrolled for the Fall 1997 semester on July 14, 1997, the court also held that Jennifer was emancipated and terminated Mr. Draper's child support obligation. Both parties now appeal.

## II. STANDARD OF REVIEW

■ We will affirm a trial court's order modifying a dissolution decree unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Welker v. Welker,* 902 S.W.2d 865, 867 (Mo.App.1995); *Moore v. Moore,* 849 S.W.2d 652, 654 (Mo. App.1993).

## III. MODIFICATION OF SPOUSAL MAINTENANCE

Mr. Draper raises two points on appeal which are directed to the trial court's continuation of the original order of maintenance for his former spouse. In both points, Mr. Draper argues that the trial court's decision was against the weight of the evidence, which he says showed that his circumstances had substantially and continually changed to such a degree that the original maintenance award of $400.00 per month had become unreasonable.

■ In Missouri, the standard for determining when the court may modify the provisions of a decree governing maintenance is set out in Section 452.370, which states in relevant part:

> [T]he provisions of any decree respecting maintenance or support *may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.* In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred, *shall consider all financial resources of both parties ...*

§ 452.370 (emphasis added). We strictly enforce these statutory requirements so as to discourage recurrent and insubstantial motions for modification. *Fulp v. Fulp,* 808 S.W.2d 421, 423 (Mo.App.1991). Ultimately, we thus require the party seeking modification of an award of maintenance to prove with detailed evidence that circumstances have changed so substantially that the prior decree is unreasonable. *McKinney v. McKinney,* 901 S.W.2d 227, 229–30 (Mo.App. 1995); *Bradley v. Bradley,* 880 S.W.2d 376, 379 (Mo.App.1994).

■ While a decrease in the income of the spouse paying maintenance or an increase in the income of the spouse receiving it are both relevant factors for the court to consider, neither alone requires a court to modify the amount of maintenance previously ordered. *Bradley,* 880 S.W.2d at 379. The ultimate issue remains whether these

1. All statutory references are to RSMo 1994, unless otherwise indicated.

changes are sufficiently substantial so as to make the original terms of the decree unreasonable. Thus, if, despite a decrease in income, the spouse who is paying maintenance is still able to meet his or her reasonable needs and to also pay the maintenance previously ordered, a significant change of circumstances has not occurred.[2] Similarly, if, despite an increase in income, a spouse who has been receiving maintenance still needs the maintenance awarded in order to meet his or her reasonable needs, a significant change of circumstances has not occurred. *See, e.g., McKinney v. McKinney,* 901 S.W.2d 227 (court held it was not unreasonable to expect wife to return to work after divorce, and her attempt to supplement her retirement was not a significant change of circumstances to warrant a modification of maintenance).

■ In support of his argument that the court below erred in failing to terminate maintenance, Mr. Draper notes that he offered testimony that his health had deteriorated and his income had decreased. The record does show that he testified that at the time of the dissolution in 1992, he was making approximately $45,000 in adjusted gross income per year. He testified he continued to earn a salary in that same range until December 2, 1995. On that date, Mr. Draper determined that he could no longer return to work to perform his job due to a "combination of mental and physical problems," including osteoarthritis in his left knee and depression. He thus quit his job and applied for disability payments through his employer. He immediately began receiving short-term disability payments at his same rate of pay for six months. Thereafter, he was placed on long-term disability. As a result, his pay gradually decreased to $2,596.00 per month, or approximately $31,152.00 a year. After taxes and deductions, Mr. Draper takes home around $1,900.00 per month, or $22,-800.00 a year, in disposable income, about

fifty percent of his previous adjusted gross income. He has therefore shown a decrease in his income. For multiple reasons, however, we do not find that this decrease in income justifies a reduction or elimination of his maintenance payments.

First, the reason for the drop in income was Mr. Draper's decision to quit work and depend on long-term disability. Mr. Draper cites us to *Dow v. Dow,* 728 S.W.2d 714 (Mo.App.1987), and *Holt v. Holt,* 633 S.W.2d 171 (Mo.App.1982), which he says hold that a disability or "forced retirement" resulting in lower income is a substantial and continuing change of circumstance. Neither case holds that such a forced retirement is *per se* evidence of significant changed circumstances, however. Rather, the cases merely recognized that disability, forced retirement, or other causes of decreased future earning potential, as well as unemployment, are relevant factors to consider when weighing whether or not a spouse is able to pay his or her maintenance obligation while still meeting his or her own financial needs.

■ Second, while Mr. Draper has shown that he was placed on long-term disability at the time of the hearing, he presented no medical or vocational expert evidence to support his claim that his disability is permanent. If it is not, then his decision to seek early retirement is considered a voluntary reduction in income and cannot support a reduction in maintenance. *See Leslie v. Leslie,* 827 S.W.2d 180 (Mo. banc 1992) (early retirement is not evidence of substantial and continuing change of circumstance such as to allow modification of maintenance); *Bradley v. Bradley,* 880 S.W.2d 376 (Mo.App.1994) (fact husband voluntarily retired and reduced his income by fifty percent did not warrant modification of maintenance because there was evidence husband could supplement his retirement income with other employment).

2. *See also Lamont v. Lamont,* 922 S.W.2d 81 (Mo.App.1996) (a drop in income was insufficient evidence to modify maintenance when husband failed to show substantial change in expenses and the record showed husband could still meet his own financial needs while paying the original maintenance ordered); *Hamilton v. Hamilton,* 817 S.W.2d 937 (Mo.App.1991) (even though husband filed bankruptcy and experienced decrease in income, no modification of maintenance allowed when wife had no prospect of significant employment and her needs exceeded her personal income); *Fulp v. Fulp,* 808 S.W.2d 421 (Mo.App.1991) (husband's motion to decrease maintenance denied despite his heath problems and a decrease in pay because record showed he could still meet his original maintenance obligation).

Finally, assuming Mr. Draper's reduction in income is permanent and non-voluntary, he has not shown that he is unable to meet his reasonable needs based on that reduced income. To the contrary, calculations performed at the hearing demonstrate that even with the decrease in pay, and even if he continued to pay child support, Mr. Draper had excess funds remaining after his other obligations and expenses were subtracted from his monthly income.[3] Although Mr. Draper argues that he would not be able to meet his monthly expenses if he were to move out of his mother's residence, as he states he wishes he were able to do, we do not find this argument persuasive. The record shows that Mr. Draper chose to reside with his mother when the parties separated in 1992, at a time when he was taking home at least $45,000 a year. He continued to reside with his mother through 1996, when he was still taking home at least $45,000 a year. Therefore, although it is convenient for Mr. Draper to argue that he would now be unable to pay rent for a place of his own with his decreased income, the trial court was not required to believe that he had a desire to move since he never left his mother's home when he was more financially able to do so. Moreover, as discussed *infra*, we affirm the trial court's determination that his daughter is emancipated. He thus will no longer be required to pay the $516.00 per month in child support. This would enable him to move to his own apartment, if he does so desire.

As noted earlier, in addition to looking at Mr. Draper's reasonable needs, we must also look at whether his former spouse continues to need maintenance. The record shows that, despite Mr. Draper's lower income, he still earns significantly more than Ms. Draper, and her need for maintenance continues. Ms. Draper did not work outside of the home during their 22 year marriage and she only recently joined the work force. At the time of the hearing, Ms. Draper was working as a manager in a thrift shop and was earning approximately $950.00 per month. No arguments or evidence were presented at trial to show that Ms. Draper is either underemployed or has a prospect of significant advancement with her current job. Equally important, Ms. Draper demonstrated below that her expenses have increased since the original order due to significant medical bills, so much so that she cannot meet her monthly financial obligations on her income alone.[4]

The above facts are most similar to those in *Fulp v. Fulp*, 808 S.W.2d 421 (Mo.App. 1991). In *Fulp*, after the dissolution of marriage the husband experienced employment setbacks and health problems. But, despite this lower income, the husband still made more money than the wife, and, even with increased expenses, the husband failed to demonstrate that he was unable to meet his maintenance and child support obligations. The court therefore denied his motion to decrease or terminate maintenance.

Here, as in *Fulp*, when weighing Mr. Draper's ability to pay maintenance against Ms. Draper's reasonable needs, there is sufficient evidence in the record that Mr. Draper is able to pay his original maintenance obligation of $400.00 a month, and that Ms. Draper needs this income to meet her reasonable needs. Therefore, Mr. Draper has failed to show a substantial and continuing change in circumstance which has made the maintenance award unreasonable. The decision of the trial court denying a modification of maintenance is affirmed.

## V. EMANCIPATION OF CHILD AND TERMINATION OF SUPPORT

In her cross-appeal, Ms. Draper argues that the trial court erred in declaring the parties' then 19-year old daughter, Jennifer,

---

3. . Mr. Draper testified that each month, when his maintenance and child support are subtracted from his after-tax income of $1,900.00, he is left with approximately $1,038.00 a month to live on. He testified that his personal expenses average around $910.00 a month, which leaves approximately $128.00 a month in excess funds. To this must be added back in the amount previously paid in child support of $516.00 per month. Mr. Draper thus has $644.00 in remaining funds over his expenses each month.

4. Ms. Draper testified that to meet the minimum payments on all of her financial obligations, her monthly expenses total $1,799.06 a month, approximately $850 more than her monthly take-home pay of $950.

emancipated, and in terminating Mr. Draper's child support payments.

The record shows that Jennifer graduated from high school in the Spring of 1996 and immediately enrolled in a few classes for the following Fall semester at a local community college. After successfully completing the Fall 1996 semester, Jennifer continued her studies and registered for the Spring 1997 semester. However, five weeks prior to the end of the Spring semester, Jennifer dropped out of school. Ms. Draper asserts that Jennifer was forced to drop her courses because of personal, emotional and physical problems; specifically, Jennifer was having difficulty with a boyfriend and had some residual problems from prior knee surgery. Ms. Draper further asserts that Jennifer's absence from college was only temporary, and claims that she was actually registering for the very next Fall semester on the second day of the hearing, July 14, 1997. Therefore, Ms. Draper argues, even though Jennifer is over the age of 18 years, she qualifies for continued child support under the "continued education exception" set out in Section 452.340.5.

Section 452.340.5 provides in part:

[I]f the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school ... and *so long as the child enrolls for and completes at least twelve hours of credit each term at an institution of vocational or higher education and achieves grades sufficient to re-enroll at such institution,* the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs.... If the circumstances of the child manifestly dictate, the court may waive the October first deadline for enrollment required by this subsection.

§ 452.240.5 RSMo Supp 1997 (emphasis added). Missouri courts have liberally construed the provisions of the above statute to be consistent with the public policy interest of encouraging children to pursue higher education. *Braun v. Lied,* 851 S.W.2d 93, 96 (Mo.App.1993). Nonetheless, if attendance is not continuous, a court will find the child emancipated unless all of the following three elements are present: (1) the interruption from the enrollment is temporary; (2) there is an evident intent to re-enroll; and (3) there are manifest circumstances which prevented the continuous enrollment. *Daily v. Daily,* 912 S.W.2d 110, 112 (Mo.App.1995). "Manifest circumstances" are those situations which are beyond a child's control. *Id.* Thus, if circumstances are within a child's control, the departure is considered voluntary and the fact the interruption in enrollment is temporary does not justify the court in waiving the continuous attendance requirement. *Id.*

*Braun v. Lied* granted a waiver of the continuous and regular attendance requirement of Section 452.340.5. *Braun,* 851 S.W.2d at 96. In that case, the child had been attending college on a regular basis, but in the middle of the semester learned she had a potentially serious illness. Due to the uncertainty as to what medical treatment would be necessary in the following months, she refrained from enrolling in courses for the next semester. Once the health problem was under control, however, the child immediately re-enrolled for the next semester. The court held that this lapse in enrollment was due to external causes outside of the child's control, and that because she re-enrolled and had long-term educational goals, the requirement for continuous enrollment was waived. *See also McNair v. Jones,* 892 S.W.2d 338 (Mo.App.1995) (waiver permitted because child's delay in educational plans was due to lack of financial support from father); *Thompson v. Dalton,* 914 S.W.2d 811 (Mo. App.1995) (child with learning disability met requirements for waiver because he was taking home-study GED program and showed an intent to continue his education at a community college).

Although waivers under Section 452.340.5 have been granted in instances where the child suffers from a medical condition preventing the regular attendance at classes, Ms. Draper did not present sufficient evidence of a serious physical or mental condition justifying a waiver of the continuous attendance requirements here. · The record

shows only that Jennifer had problems with a boyfriend and some difficulty with her knees, and no medical records were offered showing the severity of the knee problem. There was no showing why either situation made her unable, as opposed to unwilling, to attend school. Thus, even if Jennifer's absence from school was only temporary and she had an intent to re-enroll, we cannot say Jennifer's absence from school was involuntary. Moreover, the court was not required to believe Jennifer's claim that she had planned to re-enroll the following semester, where, as here, the only evidence showed that she had done nothing to re-enroll until the day of the second hearing. While Ms. Draper claimed this was the first day that enrollment opened, the court was not required to find, based on this, that the continuous attendance requirement should be waived. Because the evidence in the record supported a determination that the necessary "manifest circumstances" to meet the requirements for waiver were not met, the decision of the trial court to emancipate Jennifer and terminate her child support under Section 452.340.5 is affirmed.

The judgment is affirmed.

Presiding Judge ALBERT A. REIDERER, and Judge HAROLD L. LOWENSTEIN, concur.