Anita L. **BAUER**, Respondent/Cross–Appellant,

v.

Lynn Willard **BAUER**, Appellant/Cross–Respondent.

No. ED 76387.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 3, 2000.

☞306

Allan H. Zerman, Law Office of Zerman & Mogerman, Clayton, for appellant.

Charles P. Todt, Cheryl A. Zopp, Clayton, for respondent.

SHERRI B. SULLIVAN, Judge.

Lynn Willard Bauer (Husband) and Anita L. Bauer (Wife) each appeal from the trial court's Order and Judgment Modifying Judgment of Decree of Dissolution and Determining Liability. We affirm in part and reverse in part.

The court dissolved the marriage of Husband and Wife on December 18, 1995.

The dissolution decree awarded Husband and Wife joint legal custody and Wife primary physical custody of the parties' two children (the children or Son and Daughter). Husband received temporary physical custody and visitation, including every other weekend, overnight on Thursdays, six weeks in summer, and every other holiday. At the time of the dissolution, Wife was employed through her personal business called "Basket of Bows," earning a gross monthly income of $1,000. Wife reported her monthly expenses as $5,864. At the time of the dissolution, Husband was employed with the Henkel Corporation (Henkel), earning a gross monthly income of $5,400. Husband listed his monthly expenses as $2,635.11. After considering all the circumstances, the court ordered Husband to pay Wife maintenance of $400 per month, and child support of $1,187 per month. The court ordered Wife to pay the first $300 per year of medical expenses for the children, and any of the children's uncovered medical expenses exceeding $300 per year were to be divided equally between the parties. The parties each received a 50% interest in the marital home. The court awarded Wife exclusive residence in the marital home until Daughter completed high school, then the home would be sold and the proceeds divided equally. The court ordered Wife to be responsible for repairs to the home under $500. The parties were ordered to share equally the expense of repairs exceeding $500.

Husband filed a Motion to Modify the Judgment, asking the court to terminate his maintenance obligation. Wife filed a response to the motion as well as a Motion to Determine Liability and to Modify the Judgment, asking the court to determine Husband's liability for the mortgage and repair expenses relating to the marital residence, to increase Husband's maintenance and child support obligations, and to modify the summer temporary custody provi-

sions. The parties resolved the summer temporary custody issue before trial and a consent judgment was entered. Husband filed an amended motion asking the court to modify his child support obligation as well, and the case proceeded to trial.

The following evidence was adduced at trial. After dissolving her business subsequent to the marital dissolution, Wife was not employed from December 18, 1995, until October 26, 1998. On October 26, 1998, Wife became employed by the National Association of Electrical Distributors, and at the time of trial earned a gross monthly income of $5,000. Wife listed her monthly expenses in her Statement of Income and Expenses filed in January of 1998 as $7,749.16. Wife did not update the statement at the time of trial.

Wife testified that she did not seek employment immediately after the dissolution proceedings because: (1) she had to handle the winding down of Basket of Bows, and (2) she had to stay home with the children for a year after the divorce because they had emotional problems resulting from the divorce. Wife has a degree in Secondary Education and work experience in the commercial real estate business. In February 1997, Wife applied to a graduate program in social work at Washington University, and was denied admission in April of that year. Wife then enrolled at the University of Missouri, St. Louis, to take prerequisite classes for the masters program. Wife applied for a job in the commercial real estate business at Turley–Martin–Tucker approximately three months prior to the trial, and discussed employment at Wolken and Associates with Mr. Wolken around that time too.

Wife also became engaged during this period of time. Wife's fiancé passed away before the trial. Wife received $45,550 from her fiancé for living expenses. Wife listed the money as a loan from her fiancé on her Statement of Property filed January 5, 1998. Wife did not sign any promissory notes for money received from her fiancé until April 1998, eight months after Husband's motion was filed.

Wife also testified that her job required a lot of travel, and therefore she would incur child care costs in order to have people stay with the children when she traveled on weekdays at a cost of $30 per day and weekends at a cost of $60 per day. Wife also testified the children had additional activities due to her work schedule.

At the time of trial, Husband was still employed by Henkel. The trial court relied on Husband's 1997 W–2 form in finding that Husband earned a gross monthly income of $5,958. Wife contends that Husband's monthly income was $7,167 in 1997. The trial court found, and Husband agreed, that Husband's monthly expenses were $2,579. Husband had to sell two rental properties awarded to him by the decree, at a loss of $12,000 and $43,000, respectively.

The trial court entered its judgment on February 19, 1999. The trial court denied Husband's motion to terminate the maintenance because it found that Wife still required maintenance because her monthly expenses exceeded her monthly income. Regarding child support, the trial court rejected both Husband's and Wife's calculations and completed its own Form 14 [1], listing a new presumed child support amount of $1067. Since this amount did not differ from the original decree's amount of $1187 by more than 20%, the court found there to be no substantial and continuing change in circumstances that would make the decree regarding child support unreasonable.

1. Civil Procedure Form No. 14 (1998) (standard form used to calculate child support and maintenance).

Both parties filed motions to amend the judgment, which the trial court denied. Husband timely filed his appeal, and Wife timely filed her cross-appeal.

In his first point, Husband claims the trial court erred in failing to terminate Wife's maintenance because Husband proved a substantial and continuing change in circumstances warranting termination. Husband submits a three-part argument in support of this point. Husband argues that the evidence showed that Wife's only effort to find employment was discussions with two employers and one employment application three months prior to trial, Wife's gross monthly income had increased by $4,000 while Husband's gross monthly income had only increased by $558, and the trial court's finding as to Wife's reasonable expenses included unnecessary and inflated expenses as well as expenses that had been addressed in other provisions of the court's order.

■ The Court of Appeals reviews an order modifying a divorce decree to determine whether the order is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. *Welker v. Welker*, 902 S.W.2d 865, 867 (Mo.App. E.D.1995). An award of maintenance will not be disturbed on appeal absent an abuse of discretion. *Rios v. Rios*, 935 S.W.2d 49, 52 (Mo.App. E.D.1996). In a proceeding to modify a maintenance award, the burden is upon the movant to establish changed circumstances so substantial and continuing as to make the terms of the dissolution decree unreasonable. Section 452.370 [2]; *Theilen v. Theilen*, 911 S.W.2d 317, 318 (Mo.App. W.D. 1995). Change, as required for modification of maintenance, entails a departure from a prior known condition. *Id.* at 319.

■ Husband argues that the evidence showed that Wife's only effort to find employment included discussions with two employers and one employment application three months prior to the trial. Husband contends since Wife did not make a good faith effort to find employment for a significant period of time after the dissolution, her maintenance should have been terminated. In support of his argument, Husband cites *Oldfield v. Oldfield*, 767 S.W.2d 134, 136 (Mo.App.E.D.1989) (Because Wife is receiving maintenance, she is under a continuing duty to exert reasonable efforts to attain self-sufficiency and will not be permitted to benefit from inaction), and *Markowski v. Markowski*, 736 S.W.2d 463, 466 (Mo.App. W.D.1987) (Failure of supported former spouse to make good-faith effort to seek employment and achieve financial independence within a reasonable time may form the basis for modification of maintenance award).

■ The factual situation in the instant case differs from those in the two cases cited by Husband. In the instant case, Wife offered reasons why she did not immediately seek employment after the dissolution. First, Wife testified she had to wind down her business. This winding down took a substantial amount of time. Second, Wife needed to devote extra time and attention to her children during the time after the divorce, because they were having emotional difficulties related to the divorce. After about a year, Wife took classes to be able to pursue a graduate degree program to in turn expand her employment opportunities. Deference is given to the trial court's coign of vantage to judge credibility of witnesses. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 826 (Mo.banc 1984). Wife eventually began seeking employment approximately three months before the trial, and obtained full-time employment around two weeks before the trial.

■ This factual scenario differs from that presented in *Oldfield*, where the wife

2. All statutory references are to RSMo (1994), unless otherwise indicated.

voluntarily quit her job due to poor health, which turned out to be a "tennis elbow," two months before the modification hearing. *Id.* at 136. This Court stated the trial court may have found she quit due to bad faith, and imputed to her the income she had been earning, $18,000 per year. *Id.* At the time of the original decree, the wife had been earning nothing, and was awarded maintenance which in effect gave her an income of $24,000 per year ($2000 per month). The court then modified the maintenance by subtracting her $18,000 imputed income from $24,000, and decreasing her maintenance to a total of $6000 per year. Additionally, in *Oldfield*, the husband's income had decreased. The court took that factor into account as well in deciding to decrease the wife's maintenance. In the present case, Husband's income has risen. Husband's financial ability to pay the original maintenance award is an important consideration in determining whether reduction of maintenance is appropriate. *McKinney*, 901 S.W.2d at 230.

In *Markowski*, the wife, who had advanced degrees, started a business which she persisted in operating at a loss for seven years after the dissolution. *Id.* at 466. The wife made no income. Taking into account her degrees, past experience and credentials, the court decided the wife had not made a good faith effort to become self-supporting within a reasonable time after the dissolution, and terminated her maintenance. The only similarity between the scenario in *Markowski* and in the present case is that both wives have substantial experience and degrees. Their conduct and length of time of that conduct differ distinctly. Wife pursued further education and eventually full-time employment less than three years from the date of the dissolution. Accordingly, *Markowski* does not aid Husband's argument.

 Husband also asserts that a substantial increase in the income of the spouse receiving maintenance is grounds for reduction of maintenance, citing *Oldfield*, 767 S.W.2d at 136. However, as a general rule, an increase in an obligee's income does not alone justify modification of the terms of a maintenance award ordered pursuant to a dissolution decree. *Zalmanoff v. Zalmanoff*, 862 S.W.2d 941, 946 (Mo.App. E.D.1993). Nor does the mere circumstance of a previously unemployed wife's return to work necessarily indicate modification of a maintenance award. *McKinney v. McKinney*, 901 S.W.2d 227, 229 (Mo.App. S.D.1995).

 Husband argues that Wife is making $4000 more per month more than when the court originally awarded her $400 in maintenance. While an increase in the income of the spouse receiving maintenance is a relevant factor for the court to consider, it alone does not require the court to modify the amount of spousal maintenance previously ordered. *Draper v. Draper*, 982 S.W.2d 289, 292 (Mo.App. W.D.1998). The ultimate issue is whether these changes are sufficiently substantial so as to make the original terms of the maintenance award unreasonable. *Id.*

*Draper* also holds that if, despite an increase in income, a spouse who has been receiving spousal maintenance still needs the maintenance awarded in order to meet her reasonable needs, a significant change of circumstances has not occurred so as to warrant modification of the maintenance award. *Id.* Husband argues that the trial court's finding as to Wife's reasonable expenses included unnecessary and inflated expenses as well as expenses that had been addressed in other provisions of the court's order. Husband argues that Wife's Quicken report for 1996, 1997, and four months of 1998, displayed lower expenses for certain major categories than did her Statement of Income and Expenses. Husband also argues that Wife's Statement of Income and Expenses was not amended

since it was filed in January of 1998, and it still included expenses that Wife no longer incurred; for example, school expenses ($121), when she is no longer attending classes because she works full-time. Further, Wife included the expense for a cleaning woman, which Husband argues raises their standard of living because her business paid for a cleaning woman while they were married.

While Husband challenges Wife's expense report, it is not the role of this Court to weigh the evidence again. *Rios*, 935 S.W.2d at 52. In evaluating the merits of a party's claimed monthly expenses, the trial court judges the credibility of witnesses and evaluates the merits of expenses claimed. *Brooks*, 957 S.W.2d at 788. The trial court found that Wife's monthly expenses were $7,749 .16, based on her Statement of Income and Expenses, and that she should continue to receive the $400 monthly maintenance because her expenses exceeded her income of $5000. We find the record supports the trial court's finding that Wife still needs the maintenance awarded in order to meet her reasonable needs. *Draper*, 982 S.W.2d at 292. The trial court did not abuse its discretion in denying Husband's motion to terminate maintenance. Accordingly, Husband's first point on appeal is denied.

In his second point on appeal, Husband argues that the trial court erred in not reducing child support paid by Husband to Wife because: (1) including the children's extraordinary expenses in the Form 14 undermines Husband's authority as a joint legal custodian; (2) the court included expenses in its Form 14 that husband should not be required to pay; and (3) the court failed to reduce Husband's child support amount by the credit for his visitation with the minor children.

■■■■ An award of child support is within the sound discretion of the trial court. *Garner v. Garner*, 973 S.W.2d 513,

514 (Mo.App. E.D.1998). In the absence of manifest abuse of discretion, the appellate court will not substitute its judgment on the modification of child support for that of the trial court's. *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App. E.D.1994). Substantial evidence must support the trial court's judgment awarding child support, and it cannot be against the weight of the evidence or contrary to law. *Buckner v. Jordan*, 952 S.W.2d 710, 711 (Mo.banc 1997). A former spouse wanting to rebut a presumed amount of child support, as calculated pursuant to Form 14, must show that that amount is unjust or inappropriate. *Garner*, 973 S.W.2d at 515. Evidence and credibility of witnesses in a proceeding for modification of child support obligation are viewed in the light most favorable to the trial court's decision. *In re Marriage of Glueck*, 913 S.W.2d 951, 954 (Mo.App. E.D.1996).

■■■■ Again, Husband has a three-prong argument. First, he maintains that the court incorrectly included $469 per month in extraordinary expenses for the children. On the contrary, the trial court may add as extraordinary expenses to the Form 14 activities "intended to enhance the athletic, cultural and social development of the children." *Garner*, 973 S.W.2d at 516. Extraordinary expenses include: cost of tutoring; private secondary schools to meet particular educational needs of a child; and camps, lessons, travel or other activities. *Id.* at 515. Wife testified as to the activities that those expenses covered: ice skating lessons, gymnastics, French lessons, choir, swimming classes, summer camp, Japanese lessons, Girl Scouts, soccer, mini courses, hockey teams and so on. Husband complains that the award of extraordinary expenses undermines his authority as a joint legal custodian, because without being consulted, he is automatically paying for activities that he may believe are not in the best interests of the children. Husband presents no legal authority in support of this argument.

Husband next argues that the court included expenses in its Form 14 that husband should not be required to pay, namely Wife's contributions to school fund raisers, Wife's payment for athletic and school pictures, PTO expenses and expenses for the high school parents' association. Husband argues that he has to pay for his own pictures, make his own contributions, and join associations on his own. We find Husband's argument is without merit, as these expenses of Wife's are incurred through supporting their children.

Husband cites *Brooks*, 957 S.W.2d at 790, in support of his argument that the trial court improperly included the children's recreation, school expenses and travel in both the calculation for the amount of Wife's maintenance, and again in child support. We find no evidence that the court duplicated these particular expenses while calculating the appropriate amounts of child support and maintenance. We find in particular that the court considered the children's extraordinary expenses in calculating child support, not maintenance.

The third prong of Husband's argument is that the court failed to give Husband a "Line 11 credit" for expenses he incurs for the children during his visitation. The trial court rejected Husband's Form 14 which included a 10% Line 11 credit. Husband presents no reasons why the court erred in doing so. Husband failed to make a sufficient showing that the court abused its discretion in rejecting his Line 11 adjustment. In the absence of manifest abuse of discretion, the appellate court will not substitute its judgment on the modification of child support for that of the trial court's. *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App. E.D.1994). Husband's second point on appeal is denied.

In his third point, Husband maintains that the trial court erred in finding that Wife is entitled to reimbursement for all capital improvements made to the marital residence because: (1) property division is not modifiable and the parties were awarded the marital residence in the dissolution as tenants in common; and (2) the trial court also inequitably determined that Husband was required to pay 50% of the entire cost of all repairs to the marital residence exceeding $500.

Section 452.330(5) provides that a "court's order as it affects distribution of marital property shall be a final order not subject to modification." A trial court in a modification hearing has no jurisdiction to open the decree and change provisions with respect to property. *Gehm v. Gehm*, 707 S.W.2d 491, 495 (Mo.App. W.D.1986).

The original decree provided that the parties each received a 50% interest in the marital home. The court awarded Wife exclusive residence in the marital home until Daughter completed high school, then the home would be sold and the proceeds divided equally. Husband complains about the portion of the court's modification order that states that Wife is entitled to reimbursement from Husband for all capital improvements she makes to the house. However, this order does not affect the division of property. The parties still receive a 50% interest in the marital home. After the original decree equally divided the parties' property, it provided that:

> Except as may be expressly provided herein to the contrary, each party shall defend, indemnify and hold harmless the other from any and all debts, loans, mortgages, obligations, and expenses in any manner arising from, related to or connected with, any item of property, real or personal, respectively received by each under the provisions of this decree.

In keeping with the provisions of the original decree that each party owns 50% of the

house, we find the modification order requires Husband to indemnify Wife 50% of the expenses she incurs in improving the residence as a whole. To the extent the language of the modification order suggests that its effect is anything other than imposing an equal responsibility on the parties to indemnify each other for improvements made to their respective 50% ownership of the marital residence, we clarify that language to comport with the equal division of the marital residence set forth in the original decree.

The original decree ordered Wife to be responsible for repairs to the home under $500.00. The parties were ordered to share equally the expense of repairs exceeding $500.00. Husband reasons that if he has to pay 50% of the capital improvement expenses as well, he is in effect paying for almost all of the repair costs. Husband fails to recognize that expenses associated with capital improvements are distinguishable from repairs. The modification order specifically provides that "Capital improvements shall be defined as those improvements that can be added to the basis in property as allowed under the Internal Revenue Code." Such a specification readily distinguishes capital improvements from repairs.

Husband also claims the court's interpretation that once a repair expense exceeds $500 the parties have to split the *entire* cost, as opposed to the *portion* of the cost exceeding $500, is unfair, because then Wife will always want the cost to exceed $500 if it will exceed $250 since then Husband will have to split the cost with her. As a result, Wife will always have more expensive work completed on the house.

Husband has not shown how the court's order regarding repair expenses modified or changed the original decree. Rather it appears from the record that it reflected the decree's exact language. For this reason, Husband's argument is without merit. Husband's third point on appeal is granted to the extent that we clarify his contribution to capital improvement expenses to be 50%, and is otherwise denied.

■ In his fourth point, Husband maintains the trial court erred in ordering the parties to go to mediation prior to filing any subsequent pleadings in this matter in that this order is a violation of the parties' constitutional right to access the courts and is invalid as it pertains to disputes over property because property division is not modifiable.

Rule 88.04(a)[3] allows the trial court to "order mediation of any contested issue of child custody or visitation, at any time, upon the motion of a party or the court's own motion." Accordingly, the trial court did not err in ordering the parties to pursue mediation specifically regarding disputes over child custody and visitation. Husband cites *State ex rel. Cardinal Glennon Mem. Hosp. v. Gaertner*, 583 S.W.2d 107, 110 (Mo.banc 1979), for the proposition that a court may not hinder a party's access to the court by imposing a prerequisite to filing a court action. *Gaertner* is concerned with medical malpractice actions, and involves a statute imposing a prerequisite filing with a Professional Liability Review Board before filing any malpractice action in court against a health provider. In coming to its decision, the *Gaertner* court recognized that such a prerequisite proceeding may delay an action in court by up to six months, and therefore unconstitutionally hindered access to the courts. *Id.*

In the instant case, the potential delay could be as short as two hours, if Husband so chose. Section (a) of Rule 88.07, entitled "Termination of Mediation," provides that a party may terminate mediation ordered under Rule 88.04 at any time after

---

**3.** All rule references are to Mo.R.Civ.P.2000, unless otherwise indicated.

two hours. Accordingly, the *Gaertner* decision is not dispositive of this point on appeal. Additionally, *Gaertner* was decided prior to the enactment of Rule 88.04, which became effective in 1991. It is apparent that Rule 88.07 contemplates the constitutionality issues involved with delaying access to the courts that were presented in *Gaertner*, because it provides a measure to avoid such unconstitutionality.

▮ Husband also maintains the mediation provision impermissibly modifies the property division of the decree. Rule 88.04 allows the court to order mediation regarding the issues of child custody and visitation only. The rule does not provide for enforced mediation regarding any other issues. The trial court's order requiring the parties to pursue mediation before filing any pleadings regarding any issue at all in this matter is overbroad. The trial court's mediation order is valid as it pertains to any issue of child custody or visitation, and void as to any other issue arising in this matter. Accordingly, Husband's fourth point on appeal is granted in part and denied in part.

▮ In her first point on cross-appeal, Wife claims the trial court erred when it failed to order Husband to pay one half of the mortgage associated with the marital residence in accordance with the decree because in doing so the trial court ignored an express provision of the decree providing that each party would defend, indemnify and hold harmless the other party from any mortgage associated with any asset awarded to that party in the decree. Wife relies on the following language in the decree:

> Except as may be expressly provided herein to the contrary, each party shall defend, indemnify and hold harmless the other from any and all debts, loans, mortgages, obligations, and expenses in any manner arising from, related to or connected with, any item of property,

real or personal, respectively received by each under the provisions of this decree.

Wife argues that the mortgage is associated with the marital home, each party was awarded a 50% interest in the marital home in the decree, and the trial court's finding that Husband is not responsible for 50% of the mortgage modifies the property division, which is a final order, not subject to modification.

The decree is silent as to who should pay the mortgage. Wife has exclusive possession of the house for twelve years, and then the parties will split the proceeds from the sale of the house. We find that it would be inequitable for Husband to be ordered to pay 50% of the monthly mortgage on a house in which he has no right to possession or benefit of enjoyment. If the court had intended to have the parties split the mortgage payment, it would have so specified in the decree, as it did regarding who was to bear costs of repairs to the house. It did not.

Husband also makes the argument that if he has to pay the mortgage while Wife has exclusive possession of the home, then she should have to pay him rent. There are cases that support this factual scenario. *See Williams v. Williams*, 990 S.W.2d 665, 668 (Mo.App. E.D.1999). Further, Wife included the full mortgage payment in her Statement of Income and Expenses, upon which Husband's maintenance obligation was based. For the foregoing reasons, Wife's first point on appeal is denied.

▮ In her second point on appeal, Wife avers the trial court erred when it ordered Wife to pay Husband $1,002.50 for reimbursement for 1997 medical counseling expenses for the minor children because the decree ordered Wife to pay the first $300.00 for medical expenses for both children each year, and the parties to equally pay all medical expense over the $300.00 threshold. Wife asserts the evi-

dence at trial was that Wife had medical expenses during the years 1996, 1997, and 1998, and the trial court failed to credit Wife with the amounts Wife paid for medical expenses.

Wife fails to present supporting documentation, such as cancelled checks or insurance reimbursement, for the medical expenses she claims she incurred, making it impossible for this Court to determine what, if any, expenses Wife actually incurred. The only evidence of payment that Wife presents are copies of her Quicken report. We find it was within the trial court's discretion to disregard Wife's Quicken report and not give Wife any credit for unsupported medical expense claims. Accordingly, this point is denied.

In her third point, Wife claims the trial court erred in calculating Husband's child support obligation because it incorrectly found Husband's income to be only $5,958 per month, did not credit Wife with any work related child care costs and did not include all of the children's extraordinary expenses. Wife maintains the trial court was required to include these items, and the substantial weight of the evidence showed that Husband had an average monthly income from all sources of $7,167 in 1997. Wife claims she testified that she would incur substantial work related child care costs due to her increased work related travel and the evidence demonstrated more extraordinary expenses than were found by the Court.

■■■ First, Wife argues that the court's finding concerning Husband's monthly gross income was not supported by substantial evidence and was an abuse of discretion. The court rejected Wife's Form 14 calculations of Husband's gross monthly income as $7,167 in 1997.[4] Husband's 1997 W–2 showed that Husband had a monthly income of $5,958, which included his potential annual bonus. The court relied on

Husband's 1997 W–2 in determining his monthly income. It is not an abuse of discretion to use Husband's tax return in determining his income for calculation of a child support award. *See, e.g., McKenna v. McKenna,* 928 S.W.2d 910, 913 (Mo.App. E.D.1996).

■■■ Next, Wife argues that the court erred in failing to include Wife's work-related child care costs on its Form 14. Wife testified concerning the child care expenses she would incur, as she had recently started full time employment that would require a lot of travel. Wife estimated the cost for the child care, based on her work-related travel, to be $600 per month. The trial court did not include that amount in determining the amount of child support.

Wife presented no evidence in support of her predicted child care expenses, or of the amount of time she would be required to travel for her job. Wife's assertion that Husband and his present wife refused to care for the children while Wife was out of town is not supported by evidence in the record. The trial court was free to accept or reject Wife's testimony as credible. Deference is given to the trial court's coign of vantage to judge credibility of witnesses. *Hoffmann,* 676 S.W.2d at 826.

In the third part of her third point on appeal, Wife asserts that the trial court erred in its calculation of the amount of extraordinary expenses it included in its Form 14. Wife testified that she incurred $667 per month in extraordinary expenses for the children. Of these expenses, the trial court included only $496 per month on its Form 14. Wife presents no evidence other than her testimony that the trial court erred in not including the additional amount she sought. We defer to the trial court's discretion in gauging the credibility of witnesses. *Id.*

For the foregoing reasons, Wife's third point on appeal is denied.

4. The court also rejected Husband's Form 14, and prepared its own.

We reverse the trial court's mediation order to the extent it pertains to any issue disputed between the parties other than issues of child custody or visitation. We clarify the trial court's order that Husband reimburse Wife for capital improvement expenditures to be limited to 50% of the cost of those expenditures. The remainder of the trial court's judgment is affirmed.

LAWRENCE E. MOONEY, P.J., and PAUL J. SIMON, J., concur.