Georgia Phyliss ADAMS, Appellant,

v.

Bobby Earl ADAMS, Respondent.

No. WD 58981.

Missouri Court of Appeals, Western District.

July 31, 2001.

Thomas M. Dunlap, Fulton, for Appellant.

William D. Rotts, Columbia, for Respondent.

Before THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, and RONALD R. HOLLIGER, Judges.

ELLIS, J.

Appellant Georgia Phyliss Adams ("Wife") appeals the judgment entered in the Circuit Court of Callaway County modifying the 1995 judgment dissolving her marriage to Respondent Bobby Earl Adams ("Husband") by terminating Husband's maintenance obligation.

On April 10, 1995, the circuit court granted Husband and Wife a legal separation. At that time, Husband was employed as a salesman by the Macklanburg–

Duncan Company and was earning $45,000.00 per year, and Wife was not employed. The circuit court found that Wife lacked sufficient property to provide for her reasonable needs of $1,100.00 per month and that she was unable to support herself through appropriate employment. Based on those findings, the court ordered Husband to pay $1,100.00 per month in maintenance to Wife. On August 8, 1995, the circuit court entered its Judgment and Order of Dissolution of Marriage continuing the previously ordered maintenance.

On August 31, 1995, Husband filed a motion to modify the decree as to maintenance. That motion was denied on October 21, 1996.

In November 1998, the Macklanburg Duncan Company decided to convert to an electronic purchasing system and to cease using salespeople. Husband was told that he could either retire or be terminated. Husband retired on January 1, 1999, at the age of 64. In conjunction with his retirement, Husband received $82,000.00 from his retirement plan.[1] In accordance with the original dissolution decree, Wife received half of that amount as part of the distribution of marital property. After finding out that he would have to retire, Husband ceased paying maintenance on December 16, 1998.

Husband obtained a seasonal job with Westlake Hardware in Fulton, Missouri, in March 1999. This seasonal work would last an average of three months per year. In that position, Husband would load dirt, wait on customers, unload trucks, move flowers, and sweep. Husband was paid $10.00 per hour and would average 40 hours per week. In 1999, Husband worked two weeks in March, four weeks in April, four weeks in May, and two weeks in June.

Husband has a progressive and degenerative heart condition. In October 1999, Husband underwent a successful angioplasty operation to treat his angina. At the time of the hearing, Husband had recovered from his surgery and his condition was not limiting his activity at work.

Husband went back to work at Westlake Hardware in March 2000 and was still working there at the time of the hearing in May 2000. At the time of the hearing, in addition to his income from the hardware store, Husband was receiving $1,219.00 from Social Security and a pension of $72.00 per month.

After the divorce, Wife moved to Edmund, Oklahoma, where she lived in a rental house. After moving to Oklahoma, Wife worked for three to four months at three different jobs. In one job, Wife hung advertisements on doorknobs. In her second job, Wife worked at a children's store. In her final position, Wife worked at a doll booth at Christmas time.

In July 1999, Wife was evicted from her home for failure to pay her rent. After she was evicted, Wife went to live with her sister, Dorothy McLean, for eight months. Wife was not employed while she was living with her sister. At some point, Wife's automobile was repossessed for failure to make payments.

While Wife was living with her, Ms. McLean filed a motion to be made Wife's legal guardian because of Wife's refusal to pursue Social Security benefits or to file legal action against Husband for failing to pay maintenance. On December 22, 1999, the District Court of Lincoln County, Oklahoma, appointed Ms. McLean to be the limited guardian and conservator for Wife. Ms. McLean then successfully ap-

---

1. Husband placed his half of this money in an IRA account, and the value of his account had increased to approximately $81,000.00 by the time of trial.

plied for Social Security benefits on behalf of Wife.

In December 1999, Wife began receiving $557.00 per month from Social Security. She was also receiving annuity payments of $70.00 per month.

On February 22, 2000, Wife filed a petition to garnish Husband's bank account to recover the unpaid maintenance.[2] That garnishment action failed because the bank account Wife attempted to garnish was held jointly by Husband and his second wife.

On March 1, 2000, Wife moved out of her sister's house and into a duplex in Oklahoma City, Oklahoma. The rent on the duplex was $300.00 per month.

On March 2, 2000, Wife filed a Motion for Show Cause Order and for Contempt against Husband for his failure to pay maintenance.[3] In that motion, Wife requested an award of attorney's fees and costs. On April 18, 2000, Husband answered that motion and filed a counter-motion asking the court to modify the judgment of dissolution by terminating his maintenance obligation. On May 1, 2000, Wife filed her answer to Husband's counter-motion and requested attorney's fees incurred in opposing that motion. A hearing on both motions was conducted on May 11, 2000.

On May 12, 2000, the circuit court entered its Judgment and Order of Modification. The circuit court found that husband had intentionally and contemptuously failed to pay the maintenance previously ordered by the court and was in arrears $21,400.00. The court ordered Husband to pay that amount within ten days or be committed to the Callaway County Jail.

In addition, the circuit court found that "there have been substantial and changed circumstances with regard to the parties which warrants a modification of the Decree of Dissolution as between them." Based on that finding, the circuit court terminated Husband's maintenance obligation.

On June 9, 2000, Wife filed a Motion to Amend, Reopen, Modify, or Correct Judgment. In that motion, Wife alleged that the trial court had improperly modified the dissolution judgment and terminated maintenance because Husband had not established a change in circumstances sufficient to warrant modification. Wife also asked the court to address her request for attorney's fees in the action. The circuit court conducted a hearing on Wife's motion on July 3, 2000. On August 18, 2000, the trial court allowed Wife to present evidence related to her request for attorney's fees, and on August 21, 2000, the circuit court entered its order denying Wife's request for attorney's fees.

On appeal, Wife challenges the circuit court's modification of the dissolution judgment to terminate Husband's maintenance obligation. She also contests the circuit court's decision to deny her attorney's fees.

Wife's first three points all make the same basic argument. In her first point, Wife claims the trial court erred in terminating maintenance because the evidence failed to sufficiently establish a substantial and continuing change in circumstances rendering the prior award unreasonable. In her second point, Wife claims that the trial court erred in terminating maintenance because there was insufficient evidence to support the judgment for the

---

2. This motion was filed by Ms. McLean as Wife's limited guardian and conservator on Wife's behalf.

3. This motion was likewise filed by Ms. McLean as Wife's limited guardian and conservator on Wife's behalf.

same reasons stated in her first point. Finally, in her third point, Wife argues that the trial court erred in terminating maintenance because the judgment was against the weight of the evidence for the same reasons stated in her first point.[4] Accordingly, we will address all of these points together.

In reviewing the trial court's decision in an action to modify or terminate a maintenance award, we will uphold the court's judgment unless the judgment is not supported by the evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Smillie v. Smillie*, 989 S.W.2d 619, 621–22 (Mo.App. S.D.1999) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Hartzell v. Hartzell*, 976 S.W.2d 624, 626 (Mo.App. E.D.1998). "[D]eference is given to the trial court's greater opportunity to judge the credibility of witnesses and the weight given opinion evidence." *McDaniel v. McDaniel*, 982 S.W.2d 729, 733 (Mo. App. E.D.1998). "The trial court may believe or disbelieve all, part, or none of the testimony of any witnesses." *Gerecke v. Gerecke*, 954 S.W.2d 665, 667 (Mo.App. S.D.1997). "An appellate court will defer to the trial court on its decision to modify a maintenance award even if the evidence could support a different conclusion." *Id.*

The maintenance provisions of a divorce decree may be modified " 'only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.' " *Fowler v. Fowler*, 21 S.W.3d 1, 4 (Mo.App. E.D.2000) (quoting § 452.370).[5] Therefore, a party moving for modification of a maintenance order bears the burden of proving, through detailed evidence, a substantial and continuing change has occurred that renders the original award unreasonable. *Sprouse v. Sprouse*, 969 S.W.2d 836, 838 (Mo.App. W.D.1998).

"Though the burden for proof of substantial change is on the movant, … the trial court's judgment is presumed valid and the burden is on the appellant to demonstrate the judgment is incorrect." *Crawford v. Crawford*, 986 S.W.2d 525, 528 (Mo.App. W.D.1999) (internal citations omitted). "The statute gives the trial court considerable discretion as to the allowance and the amount of maintenance payments, and it is the appellant's burden on appeal to demonstrate an abuse of that discretion." *McDaniel*, 982 S.W.2d at 733. "Judicial discretion is abused when the order of the trial court is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial

4. Indeed, the sum of Wife's arguments in the second and third points is to assert that she is adopting her argument from the first point.

5. Section 452.370.1, RSMo 1994 states:
Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other persons with whom he or she cohabits, and the earning capacity of a party who is not employed.

court, then it cannot be said the court abused its discretion." *Nelson v. Nelson,* 14 S.W.3d 645, 649 (Mo.App. E.D.2000).

■ We note that the only relevant finding made by the trial court in its judgment was "[t]hat there have been substantial and changed circumstances with regard to the parties which warrants a modification of the Decree of Dissolution as between them." The court did not issue any specific findings of fact, and the record does not indicate that either party requested such findings. Under the applicable case law, " '[a]ll factual issues upon which no specific findings have been made should be interpreted as having been found in accordance with the result reached.' " *Gerecke,* 954 S.W.2d at 668 (quoting *Gibson v. Adams,* 946 S.W.2d 796, 800 (Mo.App. E.D.1997)).

In the original judgment ordering maintenance, the trial court found that Wife had expenses of $1,100.00 per month. The court also found that Wife was "unable to support herself through appropriate employment, because of lack of training, long-term absence from the market, age and mental and physical condition." Based on these findings, the court awarded modifiable maintenance to Wife in the amount of $1,100.00 per month. At the time that order was entered, Husband had a monthly income of $3,750.00 per month.

■ At the May 11, 2000 hearing, Husband presented evidence that he had been forced to retire from his job as a salesman and that his current monthly income was less than half of what it had been when he was employed. In addition, evidence was adduced that Wife had begun receiving monthly Social Security benefits. A de-

crease in the income of the spouse paying maintenance and/or an increase in the income of the spouse receiving maintenance may constitute a sufficient change in circumstances to warrant modification of a maintenance order if the change is sufficiently substantial to render the maintenance terms unreasonable. *Draper v. Draper,* 982 S.W.2d 289, 291–92 (Mo.App. W.D.1998).

■ Husband was forced to retire from his job on January 1, 1999, at the age of 64.[6] At the time of the May 11, 2000 hearing, Husband's average monthly income had been reduced to $1,445.00 per month, which translates to $17,340.00 per year. Accordingly, Husband had sustained a reduction in income of over sixty-percent. Husband presented evidence that he had reasonable expenses of $1,303.00 per month. Accordingly, his income exceeded his expenses by only $142.00.

At the time of the May 11, 2000 hearing, Wife was receiving Social Security benefits in the amount of $557.00 per month. She was also receiving monthly payments of $71.00 from an annuity. Wife presented a statement of income and expenses indicating that her expenses totaled approximately $640.00 per month, and Wife's guardian testified that Wife's income was meeting her current expenses.

■ Given the change in the parties' incomes and expenses, we simply cannot say that the trial court abused its discretion in determining that the maintenance provisions of the judgment of dissolution were no longer reasonable. "The husband's ability to pay is an important consideration in determining whether reduc-

6. "[D]isability, forced retirement, or other causes of decreased future earning potential, as well as unemployment, are relevant factors to consider when weighing whether or not a

spouse is able to pay his or her maintenance obligation while still meeting his or her own financial needs." *Draper,* 982 S.W.2d at 292.

tion of maintenance is appropriate." *Theilen v. Theilen*, 911 S.W.2d 317, 319 (Mo.App. W.D.1995). The court could reasonably have determined that it would be unreasonable for Husband to pay $1,100.00 per month of his $1,445.00 per month income toward maintenance.

While Wife claims the trial court did not properly consider the Social Security income of Husband's current wife ($1,200.00 per month), the record indicates that the expenses of his current wife were not included in his list of expenses. Viewing the evidence in the light most favorable to the judgment, we cannot say that the trial court failed to adequately consider the current wife's Social Security income in assessing Husband's ability to pay maintenance.

■■■■■ Furthermore, the evidence reflects that, while Wife has asserted that Husband is capable of finding more gainful employment, Wife has not sought to obtain or maintain gainful employment since the divorce though apparently able to do so. "Missouri courts have imposed an affirmative duty on the recipient spouse to seek adequate employment to become self-supporting." *Hileman v. Hileman*, 909 S.W.2d 675, 679 (Mo.App. E.D.1995). "The failure of a supported spouse to seek employment and achieve financial independence within a reasonable time can form the basis for modification of a maintenance award." *McDaniel*, 982 S.W.2d at 733. "Passive acceptance of support over an extended period of time without significant efforts to become self-sufficient may, *in itself*, constitute a change in circumstances justifying modification of the decree by terminating maintenance." *Hileman*, 909 S.W.2d at 680 (emphasis in original).

Wife's limited guardian testified that Wife had been employed for a total of three to four months in three different jobs since moving to Oklahoma in 1995. The guardian indicated that Wife had not been employed since at least July 1999 and that she was not aware of any efforts by Wife to find employment. The guardian stated that Wife preferred to do volunteer work for her church, study, and spend time with sick people at the hospital. Wife's guardian further testified that she was unaware of any condition that prevented Wife from obtaining employment. "A court must consider the obligation of a spouse to contribute to his or her own support, absent circumstances preventing such contribution." *Hartzell*, 976 S.W.2d at 626. From the evidence presented, the trial court could reasonably have determined that Wife's decision not to pursue gainful employment over an extended period of time was a change in circumstances warranting termination of the maintenance order. *Hileman*, 909 S.W.2d at 680.[7]

■■■■ Furthermore, "[a]n award of maintenance is based upon a spouse's need, as reflected by the extent to which that spouse's expenses exceed his or her ability to pay those expenses." *Hartzell*, 976 S.W.2d at 626. Even if the circuit court did not determine that Wife's failure to seek work was in and of itself a sufficient change in circumstances to warrant termination, the trial court could have imputed monthly income to Wife in determining her ability to meet her reasonable needs and expenses. *McDaniel*, 982 S.W.2d at 733. Since the guardian testified that Wife's Social Security and pension benefits were covering Wife's ex-

---

7. "Wife's admission that she has made no effort, and will make no effort to obtain employment and contribute to her reasonable needs, is a substantial and continuing change of circumstances which will support a modification of maintenance." *Hartzell*, 976 S.W.2d at 626.

penses, the court could well have determined that, even working at minimum wage, Wife could more than adequately meet her needs. While this court might have made a different decision regarding whether to reduce or terminate maintenance, we cannot conclude from the record that the trial court abused its discretion in terminating maintenance. Point denied.

■ In her final point, Wife claims that the trial court erred in failing to award her attorney's fees. Wife argues that Husband caused her need to obtain legal assistance by failing to pay maintenance and by filing a motion to terminate maintenance and that Husband was in a better position to pay the fees.

At the hearing on attorney's fees, Wife's attorney testified that he had been paid on a contingency fee basis, but he did not reveal the terms of that agreement or how much he had been paid. The attorney testified that the had worked 27 hours on Wife's legal matters including the garnishment action, the contempt/modification proceeding, and post-trial motions. The attorney testified that his ordinary hourly rate was $120.00 per hour. Wife's attorney asked the court to award Wife $3,180.00 in attorney's fees based on what he would have been paid at an hourly rate. The trial court subsequently denied Wife's motion for attorney's fees.[8]

■ "Section 452.355 provides that the trial court may order a party to pay reasonable attorney fees after considering all relevant factors including the financial resources of both parties, the merits of the case, and the actions of the parties during the pendency of the action." *Hollins v. Hollins*, 13 S.W.3d 669, 674 (Mo.App. E.D. 2000). The trial court has broad discretion in awarding attorney's fees in a proceeding to modify a dissolution decree. *Hennessey v. Smith–Hennessey*, 997 S.W.2d 538, 544 (Mo.App. W.D.1999). "The trial court's ruling with respect to the distribution of attorney fees is presumptively correct." *Id.* "Only on a showing that the trial court abused its broad discretion in refusing to order one party to a dissolution to pay the attorney fees of the other will an appellate court overturn the trial court order." *In re Marriage of Baker*, 986 S.W.2d 950, 958 (Mo.App. S.D.1999). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 399 (Mo. banc 2001).

While Wife claims that Husband is better able than she is to pay her attorney's fees, "the fact that Husband's income exceeds Wife's, standing alone, does not compel an award of attorney fees." *In re Marriage of Baker*, 986 S.W.2d at 958. While the combination of the financial condition of the parties and the fact that Husband necessitated the action by contemptuously failing to pay the court ordered maintenance may well have been sufficient to support an award of attorney's fees, we do not believe that the trial court's ruling to the contrary was " 'so arbitrary and unreasonable so as to shock one's sense of justice.' " *Hennessey*, 997 S.W.2d at 544 (quoting *Patton v. Patton*, 973 S.W.2d 139, 148 (Mo.App. W.D.1998)). Point denied.

The judgment is affirmed.

All concur.

---

8. In the judgment, the trial court ordered Husband to pay the costs of the proceeding.