John M. Morris, III, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., HOLLIGER and HARDWICK, JJ.

### ORDER

PER CURIAM.

Charles Turner appeals his conviction for second degree assault, Section 565.060 RSMo 2000, and sentence of twelve years

**Deborah Jane LEE (f/k/a Gornbein), Appellant,**

v.

**Randall Jay GORNBEIN, Respondent.**

**No. WD 62161.**

Missouri Court of Appeals, Western District.

Jan. 20, 2004.

Milton E. Harper, Jr., Columbia, MO, for Appellant.

Douglas F. Pugh, Columbia, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and PATRICIA A. BRECKENRIDGE.

THOMAS H. NEWTON, Presiding Judge.

Ms. Deborah Jane Lee appeals from the judgment of the trial court, which reduced the spousal maintenance obligation of her former husband, Mr. Randall Jay Gornbein, and denied her request for attorney's fees. We affirm in part, reverse in part, and enter judgment under Rule 84.14, reducing the maintenance award from $900 per month to $500 per month.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When Ms. Lee and Mr. Gornbein divorced in October 1999, the trial court awarded Ms. Lee $900 per month in maintenance. At that time, Ms. Lee worked for a Lowe's home improvement store in Columbia, Missouri. She continues to work there and has since changed jobs,

with an increase in pay. The trial court found that Ms. Lee earns $850 more per month than she did at the time of the divorce.

At the time of the original marital dissolution, Mr. Gornbein worked for Metropolitan Life Insurance Company (MetLife) as a salaried manager. After MetLife eliminated his job in April 2000, Mr. Gornbein accepted another job with MetLife as a commissioned salesman. Mr. Gornbein quit that job in March 2002 for personal reasons and now works for the Guardian Life Insurance Company. Since the divorce, Mr. Gornbein has remarried. In June 2001, shortly before remarrying, Mr. Gornbein and his new wife moved to her hometown of Edwardsville, Illinois, from which Mr. Gornbein now commutes to his job with Guardian in the St. Louis suburb of Chesterfield, Missouri.

In May 2001, Mr. Gornbein filed a motion to terminate or reduce his maintenance obligation. As grounds for modification, Mr. Gornbein cited Ms. Lee's receipt of money following the settlement of a personal injury lawsuit.[1] On January 15, 2002, Mr. Gornbein filed an amended motion to modify, where he cited a substantial involuntary decrease in his income since the divorce and a decrease in Ms. Lee's reasonable monthly expenses since the divorce.[2]

Ms. Lee filed a counter-motion to increase the maintenance obligation and requested that the trial court order Mr. Gornbein to pay her attorney's fees.

The trial court issued its judgment and reduced the maintenance from $900 per month to $400 per month. The trial court further denied Ms. Lee's request for attorney's fees.[3]

Ms. Lee raises six points on appeal. In the first five points, she challenges the sufficiency of the evidence to support the modification of the maintenance award. In her sixth point, she challenges the denial of her request for attorney's fees.

## II. STANDARD OF REVIEW

"We will affirm a trial court's order modifying a dissolution decree unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Draper v. Draper*, 982 S.W.2d 289, 291 (Mo.App. W.D.1998).

## III. LEGAL ANALYSIS

### A. General Principles

■■■■ Once a trial court has awarded maintenance, it may modify that award "only upon a showing of changed circumstances so substantial and continuing as to make the terms [of the original award] unreasonable." § 452.370.1.[4] The party seeking modification bears the burden of proving such changed circumstances with detailed evidence. *Laffey v. Laffey*, 72 S.W.3d 143, 147 (Mo.App. W.D.2002).

---

1. In its conclusions of law, the trial court later ruled that "settlement of the accident case does not justify modification as such was contemplated in the dissolution. Judgment was a known issue, even if the sums were not fully known." Neither party disputes this ruling here and we do not address it.

2. After the trial court dismissed the amended motion because it was not verified, Mr. Gornbein filed a verified version of the same motion on May 29, 2002. The grounds set forth in this motion are identical to those set forth in the motion filed on January 15.

3. Although the court apparently did not rule upon Ms. Lee's countermotion, the court's ruling on Mr. Gornbein's motion effectively denied her countermotion to increase maintenance.

4. Unless otherwise indicated, all statutory references are to RSMo 2000.

"This statutory standard is designed to be strict so as to discourage recurrent and insubstantial motions for modification." *Lamont v. Lamont,* 922 S.W.2d 81, 85 (Mo.App. W.D.1996). Although the burden of proving such a change rests with the movant, we presume that the trial court's judgment is valid and the appellant has the burden of demonstrating that the judgment is incorrect. *Adams v. Adams,* 51 S.W.3d 541, 546 (Mo.App. W.D.2001).

Section 452.370.1 gives the trial court considerable discretion in modifying maintenance, and the appellant must demonstrate an abuse of that discretion. *Id.* The trial court abuses its discretion when its order is against the logic of the circumstances and is " 'so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said [that] the trial court abused its discretion.' " *Id.* at 546–47 (quoting *Nelson v. Nelson,* 14 S.W.3d 645, 649 (Mo.App. E.D.2000)).

■ As a general rule, a "substantial and continuing" change in circumstances is one that renders the obligor unable to pay maintenance at the assigned rate or one that allows the recipient to meet his or her reasonable needs with less maintenance. *Martino v. Martino,* 33 S.W.3d 582, 584 (Mo.App. E.D.2000). While changes in income constitute one relevant factor in modification proceedings, modification is not required if the only change in circumstances is a decrease in the obligor's income or an increase in the recipient's income. *Laffey,* 72 S.W.3d at 148. In addition to changes in income, other relevant factors include the obligor's future earning potential and the ability to pay support while meeting his or her own financial needs; shared living expenses; remarriage; and custody of unemanci-

pated children. *Dow v. Dow,* 728 S.W.2d 714, 716 (Mo.App. E.D.1987).

With these general principles in mind, we consider Ms. Lee's first five points. Four of the points relate in some manner to Mr. Gornbein's ability to pay the original maintenance award. We consider those points first. We then consider Ms. Lee's point regarding her reasonable needs.

## B. Evidence Regarding Mr. Gornbein's Ability to Pay

### 1  Mr. Gornbein's Job Changes

■ The trial court expressly found that Mr. Gornbein's reduced income "is not because of his voluntary action" and assessed Mr. Gornbein's ability to pay maintenance based upon Mr. Gornbein's current rate of pay. In her fifth point, Ms. Lee argues that Mr. Gornbein voluntarily quit his old job for a new one in which he earns less money and that this does not constitute a substantial and continuing change in his circumstances under section 452.370.1. In her third point, she further argues that the trial court should have focused upon Mr. Gornbein's long-term earning capacity instead of his short-term rate of pay in the new job.

■ A voluntary reduction in income does not amount to a substantial and continuing change in circumstances. *See, e.g., Draper,* 982 S.W.2d at 292–93. *See also Forhan v. Forhan,* 693 S.W.2d 164, 165–66 (Mo.App. E.D.1985) (where child support obligor voluntarily quit his job as a salesman, and took jobs selling computers and working in an office supply business before starting his own consulting business, his decline in income was of his own choosing and his earning capacity remained the

same.).[5]

Mr. Gornbein has changed jobs twice since the divorce. The first change occurred in April 2000, when MetLife consolidated three offices and eliminated his job as a salaried manager. By all accounts, this change was involuntary. Afterwards, Mr. Gornbein accepted another job with MetLife as a commissioned salesman. Although the new job with MetLife apparently was not as lucrative as the old one, Mr. Gornbein's income did not decrease uniformly, in part because of a decreasing incentive plan. In the dissolution year, 1999, he earned $66,121. In 2000, his gross income actually increased to $75,104, before falling to $50,701 in 2001.

The second job change occurred in March 2002, when Mr. Gornbein quit his job with MetLife and accepted a new job with Guardian Life Insurance Company (Guardian). This change was deliberate and voluntary. As Mr. Gornbein explained, he left MetLife because "[t]he situation at the office had continued to decline, and it was not a pleasant place to work." *Cf. Forhan*, 693 S.W.2d at 166 ("In effect, husband's decline in income was of his own choosing. His health was fine. There was no reason other than voluntary career decision that husband's income decreased. His earning capacity remained the same.").

We disagree with Mr. Gornbein that *Markowski v. Markowski* supports the proposition that such a job change is involuntary. *See* 736 S.W.2d 463 (Mo.App.W.D. 1987). The portion of *Markowski* that Mr. Gornbein refers to deals with a recipient spouse's obligation "to make a good faith effort to seek employment and achieve financial independence within a reasonable

time...." *Id.* at 466. It does not deal with the obligor spouse's deliberate decision to take another job. We note, however, that another portion of *Markowski* does address the obligor spouse's deliberate decision to take another job and cites *Forhan, supra*, approvingly. *See id.*

Moreover, the evidence does not show that the decrease in income is permanent. *Cf. Calicott v. Calicott*, 677 S.W.2d 953, 956 (Mo.App. S.D.1984) (where husband took voluntary leave of absence from employment to pursue doctorate degree he did not show that the attendant reduction in income was permanent). At Guardian, Mr. Gornbein earns a base salary of $42,000 per year ($3,500 per month), which is less than what he earned while working for MetLife. But Mr. Gornbein also has the opportunity to earn commissions at Guardian. Mr. Gornbein began working for Guardian while the modification action was pending, and he had not yet earned any commissions at the time that the trial court ruled on his motion to modify. Given his ongoing ability to earn such commissions in the future, however, it is questionable at best whether he has sustained a permanent decrease in income.

■ Ms. Lee further argues that the trial court should have considered Mr. Gornbein's earnings history rather than his rate of pay at the time of trial. Ms. Lee correctly reminds this court that "[a] party's past, present, and future earning capacity can be considered as competent evidence of a party's ability to pay maintenance." *Nelson v. Nelson*, 14 S.W.3d 645, 650 (Mo.App. E.D.2000). Since this case appears to involve—at least in part—a voluntary decrease in income, Mr. Gornbein's

---

**5.** As this court has noted before, "[t]he principles relative to reduction and imputation of a spouse's income in child support cases are equally applicable in modification of mainte-

nance cases." *Monnig v. Monnig*, 53 S.W.3d 241, 248 (Mo.App. W.D.2001) (internal quotation marks and citation omitted).

current rate of pay may be misleading. In a case involving a voluntary decrease in income, the Southern District reversed the trial court's downward modification of maintenance, pointing out that "[i]n similar circumstances, it has been held proper to consider a husband's past and present capacity to pay, as distinguished from his actual earnings." *Calicott*, 677 S.W.2d at 956. *See also Laffey*, 72 S.W.3d at 148 (focusing upon farmer's average earnings because the court recognized that farming is a cyclical business and that farm income in any given year may not truly reflect what a farmer earns on a regular basis.). In some ways, Mr. Gornbein's profession is similar to farming, to the extent that it involves commissions that are uncertain and create fluctuations in income from month-to-month and year-to-year.

And compared to Mr. Gornbein's current rate of pay, his earnings history paints a broader picture of his ability to pay maintenance. Mr. Gornbein earned $66,121 in 1999; $75,104 in 2000; and $50,701 in 2001. Mr. Gornbein earned $30,604 with MetLife in 2002 before his departure from that company and would have earned another $29,750 with Guardian during that year, potentially giving him a gross income of $60,354 for 2002. At the time of the modification proceeding, however, Mr. Gornbein explained that MetLife was disputing his entitlement to more than $29,000 of the $30,604. He had not returned the disputed money at that time and did not intend to do so, but he could not determine how the matter would be resolved. Because of this dispute with MetLife, it is not clear how much Mr. Gornbein actually earned in 2002. Assuming that Mr. Gornbein was allowed to keep all of the money from MetLife, however,

he would have earned $60,354 in 2002, even though his rate of pay dropped to $3,500 per week (or $42,000 per year), when he began working for Guardian in the second half of the year.[6]

Ms. Lee cites no case for the proposition that the trial court must consider such evidence instead of the obligor's actual earnings at the time of modification. We need not resolve this issue, however, because even if Mr. Gornbein has sustained a permanent decrease in income, the evidence still shows that he has the ability to pay the original maintenance award, given the state of his expenses. We now address that issue.

### 2. Mr. Gornbein's Expenses

Ms. Lee's first and fourth points generally relate to the evidence regarding Mr. Gornbein's expenditures. In her first point, Ms. Lee contends that Mr. Gornbein's past expenditures belie the claim that he cannot continue to pay the original maintenance award. In her fourth point, Ms. Lee contends that the trial court failed to consider the expenses that Mr. Gornbein now shares with his new wife.

### a. Past Expenditures

■ In her first point, Ms. Lee challenges several of Mr. Gornbein's claimed expenditures. She contends that Mr. Gornbein's past expenditures establish his ability to pay the original maintenance obligation. According to the point relied on, these expenditures include: (1) the deposit of $4,000 into IRA accounts for Mr. Gornbein and his new wife; (2) discretionary education expenditures of $6,769; (3) a one-time job fee of $5,150; (4) $320 per month in life insurance "for others"; (5) increased car expenses; (6) expenses de-

---

6. Ms. Lee wrongly contends that Mr. Gornbein testified that his current rate of pay is $3,815 per month. Actually, Mr. Gornbein testified that $3,815 was his rate of pay based upon his income in 2001.

ducted on tax returns; and (7) the purchase of a new home.[7]

A review of the record shows that many of these were one-time expenditures made before Mr. Gornbein took his current job with Guardian in 2002. These include the IRA purchases, the $6,769 in education expenses, and the job search fee of $5,150, all of which date from 2001. Ms. Lee has not directed us to any evidence on this issue beyond the fact that Mr. Gornbein once incurred such expenses. As a result, we cannot say that the trial court erred in its consideration of this evidence as it relates to Mr. Gornbein's current ability to pay maintenance.

The expenses related to Mr. Gornbein's car and his home are a different matter, however. As discussed in subsection b below, we agree with Ms. Lee that these expenses and other ongoing expenses suggest that Mr. Gornbein still has the ability to pay the original maintenance award.

**b.  Ongoing Expenses**

■ The trial court has a statutory obligation to "consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits...." § 452.370.1. *See also Lamont*, 922 S.W.2d at 85–86 (movant failed to present detailed evidence showing substantial change in circumstances where, among other things, he admitted that some of his expenses were offset by new spouse's income and did not specify what portion of expenses was attributable to him and what portion was attributable to new wife); *Fulp v. Fulp*, 808 S.W.2d 421, 423 (Mo.App. W.D.1991) (even if obligor's income had decreased and expenses had increased, "he could rely, if necessary, on his new wife's income for his own expenses.").

Mr. Gornbein's income and expense statement listed $3,500 in monthly income and $4,896 in monthly expenses. As Mr. Gornbein concedes, and as the trial court acknowledged, he shares some of these expenses with his current spouse. The shared expenses include a mortgage payment of $1,450, utility payments of $355, and homeowners' insurance payments of $50 per month. Mr. Gornbein did not specify what portion of these expenses was attributable to him and what portion was attributable to his current spouse.[8]

As the party seeking modification, Mr. Gornbein had the burden of establishing changed circumstances with detailed evidence. *Laffey*, 72 S.W.3d at 147. By failing to specify what portion of the shared expenses was attributable to him and what portion was attributable to his new wife, he did not meet that burden.[9] *Lamont*, 922 S.W.2d at 85–86.

---

7. In the argument portion of her brief, Ms. Lee questions other miscellaneous expenses. Her failure to identify these expenses in her point relied on precludes us from considering them. *See, e.g., Pearman v. Dep't of Soc. Servs.*, 48 S.W.3d 54, 55 (Mo.App. W.D.2001) (error raised for first time in argument portion of brief and not raised in point relied on need not be considered).

8. Mr. Gornbein testified that while it was difficult to pay the $900 maintenance amount, he had been doing so and explained, "Unfortunately, my present wife is bearing a large percentage of-of that load."

9. The trial court likewise did not indicate what portion of the shared expenses was attributable to Mr. Gornbein. In its findings on this issue, the trial court said: "Respondent claims expenses of $4,896/month with resultant shortfall of $1,396—inclusive (in expenses) of $900 maintenance. He includes some expenses which are shared by his wife; (ie [sic] mortgage, utilities, and insurance)."

Even if Mr. Gornbein and his current wife share these expenses equally,[10] his *expense statement still would overstate* the expenses attributable to him by $927.50 per month. That, in turn, would mean that Mr. Gornbein's expenses actually exceed his income by $468.50 instead of $1,396.

And the expense statement inflates Mr. Gornbein's expenses in other ways, as well. The expense statement overstates what Mr. Gornbein actually spends on his vehicle because Mr. Gornbein already deducts vehicle expenses-$485 per month-from his income taxes. Because he is able to deduct the vehicle expenses on his income taxes, his net vehicle expenses would be less than he reported on the expense statement. Without the full amount of these expenses included on his expense statement, Mr. Gornbein's income appears to exceed his expenses.

■ Finally, Mr. Gornbein's income and expense statement listed the original maintenance award itself as an expense. This is not a changed circumstance, however. "In a modification proceeding, the concept of 'changed circumstances' entails a departure from prior known conditions." *Lemmon v. Lemmon,* 958 S.W.2d 601, 604 (Mo.App. W.D.1998). The maintenance award does not represent an increased expense because it was anticipated at the time of final dissolution. *Cf. Id.* (maintenance award should not have been included in calculation of wife's present income for purposes of motion to modify maintenance).

Accordingly, we conclude that Mr. Gornbein did not establish with detailed evidence that he no longer has the ability to pay the original maintenance award. That determination does not end our inquiry, however, because we also must look at whether Ms. Lee continues to need maintenance. *Draper,* 982 S.W.2d at 293.

## C. Evidence Regarding Ms. Lee's Reasonable Needs

In her second point, Ms. Lee argues that the trial court incorrectly calculated her monthly income and improperly reduced her monthly expenses.

### 1. Ms. Lee's Monthly Income

■ First, Ms. Lee argues that the trial court overstated her monthly income by $100 per month when it found that her monthly income is $2,388 per month. Ms. Lee argues that she actually earns $2,288 per month. If anything, $2,288 may be too high. Ms. Lee testified that she earns $12 per hour for the first forty hours that she works during a week. She then earns "approximately" $6 per hour for the next eight hours that she works. She works a minimum of 48 hours per week. Assuming that these numbers are correct, then the formula for determining her monthly income is $40(12) + 8(6) \times 52 / 12 = \$2,288$. But these numbers probably are not correct because, as Ms. Lee said, she earns "approximately" $6 per hour for additional hours over forty per week. Her pay stubs show that she actually earns $1,030.40 every two weeks, which results in a monthly gross income of $2,232.53.[11] To complicate matters, Ms. Lee's income and expense statement lists a total monthly gross income of $2,065.96. In any event, we agree with Ms. Lee that the trial court's judgment overstates her income by at least $100 per month.

### 2. Ms. Lee's Monthly Expenses

---

**10.** Mr. Gornbein testified that his new wife was expected to earn approximately $60,000 in 2002.

**11.** $1030.40 \times 26$ pay periods / 12 months = $2,232.53 per month.

■ Second, Ms. Lee argues that the expenses listed on her expense statement were uncontradicted and that the trial court, therefore, should not have reduced her expenses. Ms. Lee's expense statement listed $3,274.07 in total monthly expenses. Among other expenses, this amount included the following:

$125 per month for gas and oil;

$200 per month in federal and state tax liability;

$500 per month for food;

$140 per month for "Laundry, Cleaning & Household";

$100 per month for home maintenance and repair; and

$300 per month in debt payments

The trial court found that Ms. Lee had overstated her expenses by $530 per month, as follows:

Petitioner's current expenses show $3,274.07 expenses. Gas & Oil is high for a person who lives in the same town in which she works. Paragraph M, tax liability is a defined sum and will be paid in one year or less and, thus, while a current expense is not on going. $100/month is a more correct amount for the current expense. $500 for food is excessive for a person of Petitioner's age, and the Court finds $300 or $10.00/day to be a correct figure. $140/month laundry, cleaning and household expenses is excessive, when considered with $100/month maintenance and repairs, which was justified. $300 payments seem high for the $2,900 debt shown in her property and debt form filed 8–7–01. That sum would pay the debt in 10 months or less and this is not an accurate, on going expense. Petitioner's current expenses

are more accurately approximately $2,744.07/month, which translates to a shortfall of $360/month.

As a rule, the trial court "is not required to accept a party's statement of expenses, even when the evidence is uncontradicted." *Adams v. Adams,* 108 S.W.3d 821, 827 (Mo.App. W.D.2003). The trial court is free to believe or disbelieve all, part, or none of this evidence. *In re Marriage of Thompson,* 24 S.W.3d 751, 755 (Mo.App. S.D.2000). The trial court evidently did not believe that Ms. Lee's statement of these expenses was accurate. We cannot say that the trial court erred in this determination.

■ Even with the inflation of Ms. Lee's income and the reduction of her expenses, however, the trial court still found that her expenses exceed her income by $360 per month. If that number is correct, then the trial court was justified in reducing, but not terminating, maintenance to $400 per month.[12] As noted already, however, the trial court overstated Ms. Lee's monthly income by $100. Therefore, Ms. Lee's expenses actually exceed her income by $460 per month. If the trial court had used the proper income number, the result would have been a reduction in maintenance to $500 per month. Under these circumstances, we will "give such judgment as the court ought to give." Rule 84.14. Accordingly, we enter judgment reducing the maintenance award in this case from $900 per month to $500 per month.

**D. The Trial Court's Decision Not To Award Attorney Fees**

■ In her final point, Ms. Lee argues that the trial court abused its discretion by

---

**12.** In his brief, Mr. Gornbein mentions the emancipation of Ms. Lee's son since the divorce. It is certainly proper for the trial court to consider the effect of emancipation on a party's expenses. *See, e.g., Zalmanoff v.* *Zalmanoff,* 862 S.W.2d 941, 947 (Mo.App. E.D.1993). But Mr. Gornbein has not directed us to any evidence establishing any expense Ms. Lee no longer has as a result of the emancipation.

refusing to grant her request for attorney's fees. Ms. Lee contends that the trial court should have awarded her a total of $4,575 in attorney's fees. In refusing to award attorney's fees, the trial court said:

> Attorney fees should be borne by the party incurring same when there is no compelling reason otherwise, and the Court finds same here. Further, as Respondent has prevailed on part of his case, he should not be obligated to pay Petitioner's fees, when the evidence shows he has no excess income and her ability to pay is as good as his ability to pay.

The trial court may award statutory attorney's fees "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action...." § 452.355.1. The trial court's ruling on this issue is presumptively correct. *Adams*, 51 S.W.3d at 549. "It is within the trial court's discretion whether or not to award attorney's fees under section 452.355." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 399 (Mo. banc 2001). To demonstrate an abuse of discretion here, Ms. Lee must show that the trial court's decision not to award such fees was "against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

Ms. Lee's point is somewhat confusing. Initially, she seems to complain that the trial court erred because it misapplied the law regarding attorney's fees. But then she argues that the evidence shows that Mr. Gornbein has a greater ability to pay the fees. To the extent that Ms. Lee argues that the trial court misapplied the law in considering Mr. Gornbein's status as the prevailing party, we disagree. That the trial court found Mr. Gornbein to be the prevailing party reflects the trial court's belief about the "merits of his case."

The trial court also considered the other statutory criterion—the financial resources of both parties—when it concluded that "the evidence shows [Mr. Gornbein] has no excess income and [Ms. Lee's] ability to pay is as good as his ability to pay." Even if the trial court was wrong in this conclusion, it does not necessarily render the judgment an abuse of discretion. *See Adams*, 51 S.W.3d at 549 (that husband's income exceeded wife's income, standing alone, does not compel award of attorney's fees and trial court did not abuse its discretion in denying wife's motion for attorney's fees even though "the combination of the financial condition of the parties and the fact that Husband necessitated the action by contemptuously failing to pay the court ordered maintenance may well have been sufficient" to support such an award); *Hennessey v. Smith–Hennessey*, 997 S.W.2d 538, 540, 544–45 (Mo.App. W.D. 1999) (affirming trial court's decision not to award attorney fees, where wife incurred $5,600 in fees and evidence showed that husband earned between $38,000 and $41,000 per year at the time of trial while wife earned $400 per month, relied upon public assistance, and had monthly expenses of $2,190, plus $300 per month for insurance). We do not believe that the trial court's ruling was "so arbitrary and unreasonable as to shock one's sense of justice." Accordingly, we deny Ms. Lee's sixth point.

## IV. CONCLUSION

The trial court erred when it concluded that Mr. Gornbein cannot pay the original $900 maintenance award. Even assuming that Mr. Gornbein has sustained a permanent decrease in income, the record shows that Mr. Gornbein improperly overstated his expenses. Absent those improperly

included expenses, he still has the ability to pay the original award. While the trial court appropriately concluded that Ms. Lee's expenses exceed her income, the trial court overstated her income by $100 per month when it reduced maintenance from $900 per month to $400 per month. Accordingly, we reverse the judgment modifying the maintenance award and enter judgment under Rule 84.14, reducing the maintenance award in this case from $900 per month to $500 per month.

Because Ms. Lee has not shown that the trial court's denial of her request for attorney fees was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice, we affirm that portion of the judgment.

ROBERT G. ULRICH and PATRICIA BRECKENRIDGE, JJ. concur.