Jackie D. **MCKOWN**, Appellant,

v.

Rebecca A. **MCKOWN**, Respondent.

No. WD 69681.

Missouri Court of Appeals,
Western District.

April 7, 2009.

Donald J. Lock, Gladstone, MO, for Appellant.

Thomas C. Capps, Liberty, MO, for Respondent.

Before: ALOK AHUJA, P.J., HAROLD L. LOWENSTEIN, J., and THOMAS H. NEWTON, C.J.

THOMAS H. NEWTON, Chief Judge.

Mr. Jackie D. McKown sought modification of his child support and maintenance obligations, as well as amendment of the division of dependent educational and medical costs between himself and his former spouse. The trial court found one child was emancipated, reduced child support, modified the division of uncovered medical expenses, and ordered maintenance to continue. Mr. McKown appeals the portion of the trial court's judgment denying the motion to modify or terminate maintenance. We reverse and remand.

### Factual and Procedural Background

Mr. Jackie D. and Rebecca A. McKown were married in 1978. They had four children: Andrew, born in 1979; Aaron, born in 1982; Emily, born in 1986; and Brianna, born in 1991. In August 2001, the McKowns dissolved their marriage. The parties entered into a settlement agreement that was incorporated into the judgment of dissolution. Legal custody of the three minor children was awarded jointly and Ms. McKown was designated as "primary physical custodian." Pursuant to the agreement, the dissolution court directed Mr. McKown to pay $1,380 per month in child support, and $600 per month as decretal modifiable spousal maintenance. Aaron was emancipated by stipulation of the parties in October of 2001 and child support reduced to $1,090 per month. Subsequent to the dissolution, Ms. McKown earned a Master's degree in Library Science and began a salaried position working at the military library at Fort Leavenworth. Mr. McKown continues to work at Hallmark cards, where he has worked for the last eighteen years.

In 2006, Mr. McKown moved to terminate or modify maintenance and to modify child support and the share of educational and medical costs between the parties. He argued, *inter alia,* that Ms. McKown had earned an advanced degree and now had sufficient income to provide for her own support. In 2008, after the hearing, the circuit court found Emily was emancipated, reduced child support for Brianna (the remaining minor child), ordered uncovered medical costs for the children to

be paid equally, and denied Mr. McKown's request to modify or terminate maintenance.

Pertinent to maintenance, the trial court found that "Not all of [Ms. McKown's] net income is available for payment of her reasonable expenses in that she has a support obligation to the minor child. After payment of [Ms. McKown's] reasonable expenses and her support obligation to the minor child, [Ms. McKown] has reasonable expenses in excess of her net income and child support of more than $1,000 per month." Mr. McKown's employment from Hallmark was found "sufficient to meet his own reasonable needs while meeting the needs of his former spouse and paying his child support obligation."

Pursuant to Rule 88.01,[1] the circuit court then calculated a Form 14 that included the $600 maintenance award in Ms. McKown's gross income. Mr. McKown was ordered to pay Ms. McKown $562 per month in child support. Mr. McKown appeals the denial of his request to modify or terminate maintenance.

## Standard of Review

We review the judgment of the trial court under the standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Peine v. Peine,* 200 S.W.3d 567, 571 (Mo. App. W.D.2006). We affirm unless the decision is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* We view the evidence and the reasonable inferences drawn from it in the light most favorable to the judgment. *Adams v. Adams,* 51 S.W.3d 541, 546 (Mo. App. W.D.2001). "Under this standard, considerable deference is accorded judgments turning on evidentiary and factual evaluations by the trial court, but no such

deference is accorded, however, when the law has been erroneously declared or applied." *Buchholz v. Buchholz,* 166 S.W.3d 146, 152 (Mo.App. S.D.2005).

## Legal Analysis

In order to justify modification of a maintenance award, a party must show changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable. § 452.370.1. The party seeking modification has the burden to prove changed circumstances with detailed evidence. *Swartz v. Johnson,* 192 S.W.3d 752, 755 (Mo.App. W.D. 2006). The statutory standard is strict in order to "discourage recurrent and insubstantial motions for modification." *Peine,* 200 S.W.3d at 579 (internal quotation marks and citation omitted).

In determining whether changed circumstances exist, the trial court is required to consider the income of both parties. § 452.370.1. A change in income by itself does not justify the modification of maintenance. *Lee v. Gornbein,* 124 S.W.3d 52, 56 (Mo.App. W.D.2004). "The ultimate issue is whether these changes are sufficiently substantial and continuing so as to make the original terms of the decree unreasonable." *Katsantonis v. Katsantonis,* 245 S.W.3d 925, 928 (Mo.App. E.D.2008). If an income change renders the obligor spouse unable to pay the original maintenance award, or the obligee spouse becomes able to meet reasonable needs without the original award, a substantial and continuing change may occur that justifies modifying or terminating maintenance. *Lee,* 124 S.W.3d at 56; *Adams,* 51 S.W.3d at 547.

---

1. All rule references are to Missouri Rules of Civil Procedure 2008 unless otherwise indicated. Statutory references are to RSMo 2000 unless otherwise indicated.

In the 2001 dissolution, Ms. McKown was imputed with income of $1,200 month gross; in 2008, the trial court found her earnings from her employer were $4,500 per month gross. At the time of dissolution Mr. McKown's income was listed as $6,888.00; in 2008, the trial court found Mr. McKown's monthly income to be $5,970 gross. We note initially that there is not substantial evidence in the record to support that Ms. McKown's monthly gross income was $4,500. Ms. McKown testified her gross income is $51,000 a year; her bi-weekly paystubs show a gross payment of $1,962. Consequently, the record shows Ms. McKown's gross monthly income to be $4,250, which is more than triple the amount at dissolution.

■ The increase in income of an obligee spouse will not automatically justify modifying maintenance. *Winchester v. Winchester*, 168 S.W.3d 57, 60 (Mo.App. S.D.2005). The inquiry becomes "whether there has been an increase in expenses, and other factors, in making [the] ultimate decision as to whether the spouse still needs financial assistance to meet her reasonable needs." *Id.* (internal citation and quotation marks omitted). Where the obligee spouse's income has increased but she still cannot meet her needs, a change in circumstances making the original award unreasonable has not occurred. *Eaton v. Bell*, 127 S.W.3d 690, 696 (Mo. App. W.D.2004). Consequently, to determine whether an obligee spouse's increase in income justifies a modification of maintenance, we must determine whether that spouse is still unable to meet reasonable needs and achieve self-sufficiency.

Mr. McKown contends that because of her sustained increase in income, Ms. McKown has become self-sufficient and is capable of meeting her reasonable needs without his assistance. He points to Ms. McKown's increase in assets from the time

of the dissolution and argues the trial court concluded Ms. McKown could not meet her reasonable needs only because it erred in its calculations of both Ms. McKown's net income and her expenses. In part, we agree.

### Ms. McKown's Assets

■ In the first point on appeal, Mr. McKown contends the trial court erred in failing to take into account the increase in Ms. McKown's assets from the time of the dissolution. He does not argue that the assets are income producing and should be used in calculating Ms. McKown's income for the purposes of maintenance. *See, e.g., Cohen v. Cohen*, 73 S.W.3d 39, 48 (Mo.App. W.D.2002) (determining whether assets were income producing to ascertain whether they could be included in income for the purposes of maintenance). Rather, Mr. McKown argues that the trial court erred in failing to recognize that the increase shows Ms. McKown has "income in excess of expenses that she has used to increase her wealth rather than to sustain herself" and, thereby, demonstrates her lack of need for maintenance.

Mr. McKown, however, fails to offer legal support for his argument on appeal. Even had he done so, Mr. McKown did not adduce evidence at the trial level to show Ms. McKown's increase in assets resulted from an excess in income. Rather, because Ms. McKown's assets increased, he asks for the inference to be drawn that the increase was created from excess income. Other inferences, however, are equally as plausible. For example, Ms. McKown appears to own an annuity that she did not own at the time of dissolution. Mr. McKown offered no proof as to the source of funds for the annuity, nor did he adduce testimony on the issue. Similarly, Mr. McKown points to an increase in Ms. McKown's securities, but fails to offer evi-

dence as to the source of the increase. Because Mr. McKown has failed to demonstrate error, his first point is denied.

### Ms. McKown's Income

In the second point, Mr. McKown alleges the trial court erred in calculating Ms. McKown's net income because it erroneously excluded Ms. McKown's 401(k) contributions, miscalculated her monthly 401(k) contribution, and erroneously excluded a $6,000 bonus.

■ The trial court concluded that Ms. McKown's "net monthly income including her 401(k) deduction is $3,000 and $3,200 per month net without." As Mr. McKown correctly argues, the trial court miscalculated the amount of the 401(k) contribution on a monthly basis: Ms. McKown's income and expense statement shows a bi-weekly contribution of $196.15, which is a monthly average contribution of $425.00, rather than the $200 found by the trial court.[2] Consequently, the finding was against the weight of the evidence. Moreover, an obligee spouse's voluntary 401(k) contributions may not be deducted from net income for the purposes of determining maintenance as a matter of law. *Muenz v. Muenz*, 99 S.W.3d 4, 8 (Mo.App. E.D.2002). Among other reasons, allowing such a deduction would be contrary to the statutory purpose of maintenance—assisting a former spouse who is unable to be self-supporting—by requiring the obligor to fund the obligee's building of capital. *See Brooks v. Brooks*, 957 S.W.2d 783, 793 (Mo.App. W.D.1997).

■ We do not agree with Mr. McKown, however, that the $6,000 bonus paid by Ms. McKown's employer should be counted as net income for Ms. McKown.

"As a general principle, income that is not readily available ... is not counted for maintenance purposes, while readily available income—from cash and cash-like funds—is." *Hill v. Hill*, 53 S.W.3d 114, 115 (Mo. banc 2001). Ms. McKown's pay statement listed the bonus as a 401(k) payment, and Ms. McKown testified that these monies were paid as a 401(k) matching bonus directly into her fund. Based on the trial court's findings as to Ms. McKown's income, we must presume the court believed this testimony, and we defer to its findings of credibility. *Adams*, 51 S.W.3d at 546. The trial court could find these funds were paid directly into her 401(k) account and, thus, were not available to Ms. McKown to pay for her reasonable expenses. Because the bonus funds were not readily available to Ms. McKown, the bonus was correctly excluded from her net income.

### Ms. McKown's Reasonable Needs

In the third point, Mr. McKown argues that in calculating Ms. McKown's reasonable needs, the trial court erroneously included expenses Ms. McKown had listed for their children, causing him to pay child support costs twice: once through maintenance, and again through his child support obligation.

The record shows that Ms. McKown provided an itemized list of expenses for herself totaling $2,525, an itemized list of expenses for Brianna, the youngest child, totaling $1,878, and a list of $126 in additional monthly expenses for Emily, who is emancipated. The trial court excluded or reduced some items of Ms. McKown's expenses[3] and found her reasonable monthly expenses to total $2,204. The trial court

---

**2.** $196.15 bi-weekly × 26 weeks annually, divided by 12 months equals $424.99.

**3.** Of Ms. McKown's expenses, the trial court disallowed $300 of Ms. McKown's $464 monthly tithe to her church and did not mention her $20 claimed personal property tax.

also entered findings on the itemized list of costs for Brianna, finding her expenses totaled $1,652.[4] The trial court then stated that because of Ms. McKown's own expenses and her "support obligation," Ms. McKown's reasonable expenses exceeded her "net income *and child support*" by more than $1,000 per month (emphasis added).

 The trial court's methodology was erroneous as a matter of law.[5] Maintenance is for the needs of the obligee spouse. *In re Marriage of Neu,* 167 S.W.3d 791, 795–96 (Mo.App. E.D.2005). "[S]pousal maintenance and child support are two distinctly separate concepts, and the former does not include the latter." *Nichols v. Nichols,* 14 S.W.3d 630, 637 (Mo.App. E.D.2000). Consequently, it is improper to add together a spouse's wages and child support to determine income for the purposes of maintenance—as the trial court purported to do here. *See Childers v. Childers,* 26 S.W.3d 851, 857 (Mo.App. W.D.2000).

 Likewise, in assessing the need for maintenance, "the trial court is not to consider any amounts expended for the direct care and support of a dependent child"; it is thus improper to include a dependent child's expenses in calculating an obligee spouse's reasonable needs. *Cohen,* 73 S.W.3d at 51 (dissolution court improperly included minor child's expenses and child support award when assessing maintenance).[6] To the extent the trial court included child support in Ms. McKown's income, and her expenses for Brianna—such as "food," "clothing," "school and books," "lessons," and "travel"—in its assessment of Ms. McKown's reasonable needs, its methodology was in error.

Mr. McKown urges us not to remand, arguing that "all of the necessary facts and figures" are presented in the record for this Court to modify judgment. Although we seek to dispose finally of a case, we cannot correctly determine Ms. McKown's reasonable needs from the exhibits and testimony. Among other things, we cannot separate which expenses are Ms. McKown's and which are Brianna's from this record.[7]

---

4. The trial court did not indicate which items it was excluding from the expenses Ms. McKown listed for Brianna.

5. Even if we were to use the trial court's incorrect methodology, we cannot ascertain how it reached its conclusion. Its findings create, at most, a shortfall of $420 or $220, not "more than $1,000 per month." Adding together the trial court's findings as to Ms. McKown's expenses ($2,204), Brianna's expenses ($1,652), and Emily's expenses ($126), results in expenses of $3,982. Using the trial court's findings of earned income ($3,000 or $3,200) and adding child support ($562) to income results in total net income of $3,562 or $3,762.

6. Dependent care costs—such as food and clothing—are provided for in Form 14's "Basic Child Support Amount." *See* Directions, Comments for Use and Examples for Completion of a Form No. 14, Assumptions (12).

"Other extraordinary child-rearing costs" such as tutoring, schooling, camps, lessons, "travel and other activities intended to enhance the athletic, social or cultural development of a child" may also be provided for in the Form 14 presumed child support calculation. *See* Directions, Comments for Use and Examples for Completion of a Form No. 14, Line 6e; *see also Buchholz v. Buchholz,* 166 S.W.3d 146, 157 (Mo.App. S.D.2005).

7. Ms. McKown appears to have included some of her own expenses in the column for Brianna. For example, Ms. McKown's house payment is listed as $425 under her own expenses and $425 under Brianna's expenses, although she testified her mortgage payment is $850. Ms. McKown's utilities, telephone, and cable costs appear to be similarly divided, but the record is inconclusive.

For the reasons stated, the trial court's findings as to Ms. McKown's gross income, net income, and ability to meet her reasonable needs are in error. Consequently, we reverse and remand.[8] After the circuit court has entered new findings on maintenance, it should reconsider its Form 14 presumed child support amount using corrected gross income as noted herein and reflecting any modification of maintenance, as well as any "other extraordinary child-rearing expenses" that may be included in the child support calculation. *See* DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF A FORM No. 14, Line 1a, 6e; *Schild v. Schild,* 272 S.W.3d 329, 333 (Mo.App. E.D.2008); *Buchholz,* 166 S.W.3d at 157.

### Conclusion

The trial court's order is reversed and remanded for further proceedings consistent with this opinion.

AHUJA, P.J., and LOWENSTEIN, J., concur.

---

**8.** Because we remand, we do not address Mr. McKown's additional arguments as to the sufficiency of the evidence supporting Ms. McKown's reasonable needs.